A. B. BARRETT *v.* HENRY P. SALTER and others, Owners &c. of the ship Huron.

Where the master receipts for articles to be shipped on his vessel, as in good order, the vessel will be responsible for any damage subsequently discovered, unless clearly proved to have occurred before the delivery. And where he gives a receipt for goods left on the levée, they are as much at the risk of the ship, as if actually on board.

Where the goods left on the levée to be shipped, are exposed to rain, and the shipper subsequently proposes to the master to ascertain the damage from the exposure, before the voyage, and the latter declines to do so, the vessel will be responsible for any increase of damage, resulting from the voyage, and the delay to which the goods are necessarily exposed in the foreign port before they could be examined.

APPEAL from the Commercial Court of New Orleans, *Watts, J.*

*C. M. Jones,* for the plaintiff.

*Jewett,* for the appellants.

MORPHY, J. This action is brought to recover of the captain and owners of the ship Huron, $1,409 46, for loss and damage sustained on forty hogsheads of tobacco, delivered on board of said ship in July 1842, and consigned to John Gilliat & Co., of London. The petitioner alleges that at the time of the delivery and receipt of the tobacco, it was sound and in good order, but that through the culpable negligence, carelessness and inattention of the captain, the forty hogsheads of tobacco, after being received by the ship, were suffered to lie out on the levée exposed to a violent storm of rain, by which they were damaged to the amount above stated, for which the defendants are responsible, as they contracted to deliver this tobacco in London, in the same order in which they received it. The defendants denied their indebtedness, and pleaded the general issue. There was a judgment below against them, from which they have appealed.

The evidence shows that on the 29th and 30th of July 1842, Bowe & Crenshaw, the plaintiff's agent in New Orleans, ship-

ped forty hogsheads of strip tobacco on board the ship Huron, consigned to the house of Gilliat & Co. of London. Two of the clerks of the shippers, testify that on both days the weather was good at the time the tobacco was sent to the ship, and that it was receipted for by the mate as being in good order and condition; that a few hours after it had been received on the first day, a heavy rain came on, which lasted about two hours, to which the tobacco was suffered by Captain Paine to remain exposed; that when the rain was over, the witnesses were directed by Bowe & Crenshaw, to see whether any of their tobacco had been left out in the rain, and, if so, to take the marks and numbers of such of the hogsheads as had been so exposed. That they found the tobacco on the levée without any covering; that in the absence of the captain, they expostulated with the mate on the exposure of the tobacco during the rain, and on the probable injury it would sustain, if stowed away in its wet condition; that the mate answered that, he thought the casks sufficiently tight not to admit the rain, and that there could be no risk in taking the tobacco on board, and proceeding to sea. On the following day, after some tobacco had been sent to the ship, a heavy rain fell at about twelve o'clock, after which the witnesses were again sent to the vessel, and found the tobacco wet and exposed as on the preceding day. Robinson, one of these clerks, testifies, that he then went on board of the Huron, and found Captain Paine sick in his bed. That he complained to him that the tobacco sent to the ship on that day, and the day before had not received the usual care and attention at his hands; that on both days it had been left exposed to heavy rains, and if placed on board without being opened and trimmed, the tobacco, upon its arrival in London, would be found to much damaged; that if such was the case, the ship would be held responsible, as the shippers had provided themselves with the particular marks and numbers of the hogsheads, and would report them to the London house. Captain Paine answered, it would be hard to hold the ship responsible, as he was sick, and had to trust the management of every thing to the mate; and that had he been well, the matter would have been better attended to. This witness testifies farther, that he proposed to Captain Paine, as the

only means of avoiding a heavy loss in London, to have the hogsheads opened, and should it appear that the rain had pene- the trated, to have the wet tobacco trimmed off; that Bowe & Crenshaw would consent to such a course on his paying ex- penses of such opening, and the damage which should prove to have then occurred, but, that Captain Paine declined to ac- cept the proposition, adding that he did not expect that the tobacco could have been injured as the casks were good and tight. The mate, whose testimony was taken under a commis- sion, says, that, on the 30th of July, 1842, twenty-eight hogs- heads of tobacco were exposed to the rain on the levée; that during the heaviest part of the shower, it was not covered with canvass, but that, as soon as the rain abated, so that he could induce his men to work, he had the hogsheads rolled to- gether and covered with sails. That he had sent word to Bowe & Crenshaw, on the coming of the rain, to send no more to- bacco at that time; that he received no answer; but that they continued to send tobacco to the ship. In a written paper, annexed to the commission, this witness makes the additional and different statement, that he wrote on the back of a dray receipt a note to the shippers, requesting them not to send any more tobacco as there was a prospect of rain, and that they answered on another dray receipt, that the tobacco was on the levée, and might as well be exposed at the ship, as at the steam- boat landing. This witness adds, that the tobacco arrived so fast on the 30th of July, that it was impossible to get it all on board before the rain, though all the men were diligently at work for the purpose; that some drays arrived with tobac- co even after the rain had begun, but that he directed them to take shelter under the arch of the Orleans Cotton Press. Clear bills of lading were delivered to the shippers. The tobacco ar- rived in London in the begining of October, but its turn to be examined at the Queen's Warehouse came on only in December following. It was found to be very much injured by rain water, and it became necessary to cut off several thousand pounds of it. From the certificate of the keeper of the Queen's Tobacco Warehouse in the London Docks, and his testimony, and that of other witnesses, taken under a commission, the damage and

Barrett v. Salter and others.

loss are shown to amount to the sum of £317 2s 10d, equal to $1,409 46. Under the evidence, it does not appear to us that the judge below erred in the conclusion to which he came. If with all due exertion the tobaco could not have been rolled on board . before the rain, the ordinary precaution of covering it with tarpaulins or sails, might, and should have been taken to protect it from the coming shower, of which there must have been previous indications. If, as is stated by the mate, in opposition to the clerks of Bowe & Crenshaw, a part of the tobacco was brought during the rain, or against his notice not to send any more, he was not bound to receive it at that time ; yet from the moment he receipted for the tobacco as being in good order, the ship became responsible for any damage to it susequently discovered, unless clearly proved to have occurred before the delivery. In *Fisher et al.* v. *Brig Norval et al.*, 8 Mart. N. S. p. 120, this court held, that if the master gives a receipt for goods left on the levée, they are as much at the risk of the ship as if actually put on board. Had Captain Paine accepted the proposition to ascertain and repair the damage at New Orleans, the amount of the loss would have been comparatively small. In declining this offer, he took upon himself the risk of the increase of the damage during a long voyage, and the delay which he must have known would occur before the tobacco could be examined in London. It is further shown, that upon the captain's return to the latter place on a subsequent voyage, he offered one hundred and forty pounds to settle the claim of the plaintiff ; this offer, the receipts of the mate, the clear bills of lading afterwards given, and the whole evidence in the case appear to establish fully the liability of the defendants.

*Judgment affirmed.*